NORTHEAST OHIO NATURAL GAS CORPORATION, Appellant,

v.

STOUT EXCAVATING, INC., Appellee.

[Cite as *Northeast Ohio Natural Gas Corp. v. Stout Excavating,*
156 Ohio App.3d 144, 2004-Ohio-600.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 03CA0030.

Decided Feb. 11, 2004.

Thomas E. Lammert, for appellant.

Mark F. Fischer and Kristen E. Campbell, for appellee.

SLABY, Judge.

{¶ 1} Appellant, Northeast Ohio Natural Gas Corporation, appeals from the judgment of Wayne County Municipal Court that granted the motion for summary judgment of appellee, Stout Excavating, Inc. We affirm.

{¶ 2} In December 2002, appellant filed a complaint against appellee, seeking a monetary award for the damage that occurred to its underground gas pipeline while appellee was excavating a new housing development in the Crosswinds allotment in Wayne County. Appellee filed an answer and alleged compliance with statutory requirements in its defense. Discovery then commenced.

{¶ 3} Thereafter, appellee filed a motion for summary judgment and appellant responded in opposition. The trial court granted the motion and dismissed the complaint. Appellant timely appealed, asserting one assignment of error for review.

## ASSIGNMENT OF ERROR

"The trial court abused its discretion in granting appellee's [Civ.R.] 56 motion for summary judgment."

{¶ 4} In its sole assignment of error, appellant asserts that the trial court erred in granting appellee's motion for summary judgment as genuine issues of material fact exist. Specifically, appellant maintains that conflicts exist regarding (1) appellee's compliance with the statutory notice requirements; (2) appellee's reliance, in December 2001, on pipeline location markings placed in September 2001; (3) the accuracy of appellant's markings; and (4) the possible removal or destruction of the markings prior to December 2001. We disagree.

{¶ 5} Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. An appellate court reviews a trial court's granting of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Klingshirn v. Westview Concrete Corp.* (1996), 113 Ohio App.3d 178, 180, 680 N.E.2d 691. Any doubt is to be resolved in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 6} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and is to identify portions of the record that demonstrate the absence of genuine issues of material fact as to an essential element of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The burden will then shift to the nonmoving party, to offer "specific facts showing that there is a genuine issue for trial[.]" Id. See, also, Civ.R. 56(E). The nonmoving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 7} In Ohio, a nondelegable duty is imposed upon an excavator to inform himself as to whether utility lines exist below ground so that he may avoid

damaging them. *GTE Tel. Operations v. J & H Reinforcing & Structural Erectors, Inc.*, 4th Dist. No. 01CA2808, 2002-Ohio-2553, 2002 WL 1291953, at ¶ 9, citing *GTE North, Inc. v. Carr* (1993), 84 Ohio App.3d 776, 779, 618 N.E.2d 249. When an excavator fails to perform such duty, he proceeds at his own risk and incurs liability for damage to utility lines. *GTE Tel. Operations* at ¶ 9, citing *GTE North, Inc.*, 84 Ohio App.3d at 780, 618 N.E.2d 249. R.C. 3781.25 et seq. outlines a plan for the protection of underground utility facilities in private improvement projects: once notice has been by provided by an excavator to a utility company, the utility owner then bears the primary responsibility for supplying reasonably accurate information regarding the approximate location of the underground facilities. *E. Ohio Gas Co. v. Kenmore Constr. Co., Inc.* (Mar. 28, 2001), 9th Dist. Nos. 19567 and 19790, at 17, 2001 WL 302818. Thus, compliance with the notice requirements of R.C. 3781.25 et seq. fulfills an excavator's duty to inform oneself of the location of underground utility facilities. See *Ohio Edison Co. v. Wartko Constr.* (1995), 103 Ohio App.3d 177, 180, 658 N.E.2d 1118.

{¶ 8} Prior to groundbreaking, the excavator must notify the Ohio Utilities Protection Service ("OUPS") in advance of the location of a proposed development site and the date on which the excavation is scheduled to commence. R.C. 3781.27(A) and 3781.28(A). Such notification is to occur "at least forty-eight hours but not more than ten days before commencing excavation[.]" R.C. 3781.28(A). The utility company must then designate the approximate location of the underground facilities with the appropriate color-coded flag. R.C. 3781.29(A)(1). Gas transmission and distribution lines are to be marked with "[s]afety yellow." R.C. 3781.29(C). Pursuant to R.C. 3781.29(A)(1), if a utility company is unable to accurately mark the approximate location, the excavator is to be notified that the markings may not be accurate and additional guidance is to be provided to the excavator in locating the facilities throughout the excavation.

{¶ 9} When the excavation covers a large area and will "progress from one area to the next over a period of time, the excavator shall provide notice of excavation for segments of the excavation as the excavation progresses in order to coordinate the marking of approximate locations with actual excavation." R.C. 3781.28(E). The excavator is to protect and preserve the markings of the underground utility locations until they are no longer necessary for safe excavation. R.C. 3781.30(B). If the markings are destroyed or removed prior to completion, the excavator is to notify the utility and the utility shall remark the approximate locations within forty-eight hours of notice. R.C. 3781.31(B).

{¶ 10} In the present matter, appellee was in the process of excavating a new housing development, the Crosswinds, in Wayne County. Jay Stout ("Stout"), owner of appellee, testified at his deposition that the development

covered a five hundred by one thousand foot open field. Before excavation began, on September 19, 2001, Stout contacted the OUPS and requested that "the *entire area* * * * be marked[;] * * * [He] requested [each utility] to mark the *entire location* for any lines they would have had[.]" (Emphasis added.) Stout explained that the gas line was marked with yellow flags. He acknowledged that the flags were not permanent and could be removed. However, Stout maintained that the flags remained in their original locations "for months" and were not removed by himself or any of appellee's employees.

{¶ 11} Stout testified that he was not present when appellant surveyed the area for the gas lines. He indicated that after excavation began, representatives of appellant were at the job site on several different occasions. Stout recalled speaking with Scott Scheoppi, the individual responsible for marking the site, the day before the incident occurred. He further recalled discussing the work that was being performed. Stout asserted that Scheoppi observed the future site for the retention basin, and he explained why the pond was moved further away from the gas line. Stout also informed Scheoppi that they had successfully "hand dug" beneath the line when constructing the storm sewer.

{¶ 12} The following day, on December 13, 2001, the gas line was struck when Stout was excavating with a track hoe. Stout explained that although the flags indicated the gas line continued in a straight path, there were actually curves in the line that were not marked. Stout asserted that the pipe was struck in an area where there was a curvature.

{¶ 13} Gregory Litzinger, vice president of operations for appellant, was also deposed. Litzinger recalled receiving a request from OUPS, in September 2001, to locate appellant's pipelines in the designated area. Scheoppi was dispatched, and the pipes were marked with the standard yellow flags. He stated that three months later, in December 2001, Scheoppi was driving by the job site and observed Stout excavating near the pipeline. The following day, the pipeline was struck. Litzinger testified that although "the line was located in the area described by the OUPS ticket," they had no knowledge of any actual excavation around the pipeline until Scheoppi observed Stout digging the previous afternoon, which was three months after the area had been surveyed. However, Litzinger acknowledged that the area in which the line was struck was part of the original project that was surveyed and marked in September 2001. Specifically, he stated that "the work had been done as part of the project. * * * [I]t was pretty obvious that was part of the project. It was called in on a locate three months earlier." Additionally, Litzinger indicated that had Stout placed a second call to the OUPS, appellant would have "remarked the line" as the initial flags could have been "knocked around and moved over."

{¶ 14} Upon review, we find that the trial did not err in granting appellee's motion for summary judgment. Appellee presented evidence indicating that its performance was in compliance with Ohio law; it is undisputed that the OUPS was contacted before excavation at the project site began and both Stout's and Litzinger's testimony indicates that the area was surveyed and marked as part of the original project. No evidence was presented suggesting either that the markings were destroyed or removed prior to excavation or that appellee failed to preserve them. Thus, appellant has failed to meet its *Dresher* burden of demonstrating that there were genuine issues of material fact in existence and that appellee was not entitled to judgment as a matter of law. Appellant's sole assignment of error is overruled.

{¶ 15} Appellant's assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

WHITMORE, P.J., and BATCHELDER, J., concur.